# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| **DORINDA L.,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**KILOLO KIJAKAZI,**[1]<br>**Acting Commissioner of Social Security,**<br><br>    **Defendant.** | REPORT AND RECOMMENDATION<br><br>Case No. 1:21-cv-00002-HCN-JCB<br><br><br>District Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Jared C. Bennett |

District Judge Howard C. Nielson, Jr. referred this case to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(B).[2] Before the court is Plaintiff Dorinda L.'s ("Plaintiff") appeal of Acting Commissioner of Social Security Kilolo Kijakazi's ("Commissioner") final decision determining that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act[3] and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.[4] After careful consideration of the written briefs and the complete record, the court concludes that oral argument is not necessary. Based upon the analysis

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Under Fed. R. Civ. P. 25(d), she has been substituted for Commissioner Andrew M. Saul as the Defendant in this action. ECF No. 21.

[2] ECF No. 12.

[3] 42 U.S.C. §§ 401-434.

[4] *Id*. §§ 1381-1383f.

set forth below, all of Plaintiff's arguments on appeal fail. Therefore, the court recommends affirming the Commissioner's decision.

## BACKGROUND

Plaintiff alleges disability due to various mental and physical impairments. Plaintiff applied for DIB and SSI in March 2013.[5] Plaintiff's applications were denied initially and upon reconsideration.[6] On April 7, 2016, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ").[7] Thereafter, the ALJ issued a written decision denying Plaintiff's claims for DIB and SSI.[8] Plaintiff appealed the ALJ's adverse ruling, and, on April 28, 2017, the Appeals Council denied her appeal,[9] making the ALJ's decision final for purposes of judicial review.[10]

Plaintiff appealed the Commissioner's final decision, and the district court affirmed.[11] Plaintiff then appealed the district court's decision, and the United States Court of Appeals for the Tenth Circuit reversed the district court and remanded for further proceedings.[12]

---

[5] ECF No. 17, Administrative Record ("AR ___") 205-18.

[6] AR 101-04.

[7] AR 57-76.

[8] AR 37-56.

[9] AR 1-6.

[10] 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

[11] *Lauer v. Berryhill*, No. 1:17-CV-00089-DBP, 2018 WL 794521 (D. Utah Feb. 8, 2018), *rev'd sub nom. Lauer v. Comm'r, SSA*, 752 F. App'x 665 (10th Cir. 2018).

[12] *Lauer*, 752 F. App'x 665.

Consequently, the district court remanded the case to the Commissioner for further proceedings consistent with the Tenth Circuit's decision.[13]

On remand, the ALJ held a second hearing[14] and subsequently issued a second written decision on Plaintiff's claims for DIB and SSI.[15] At step one of the second decision, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of November 9, 2012.[16] The ALJ then determined at step two that Plaintiff had the following severe impairments: (1) obesity; (2) left knee osteoarthritis; (3) cervical and lumbar degenerative disc disease; (4) major depressive disorder; and (5) generalized anxiety disorder.[17] At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a listed impairment.[18]

After evaluating the record evidence, the ALJ concluded that Plaintiff had the RFC "to perform light work . . . except she can occasionally climb, balance, stoop, kneel, crouch, and crawl. Additionally, she would be limited to simple, routine, and repetitive tasks, in a work environment free of fast-paced production requirements, involving only simple work-related

---

[13] AR 703-05.

[14] AR 636-67.

[15] AR 611-35.

[16] AR 617.

[17] AR 617-18.

[18] AR 619-20.

3

decisions, and few workplace changes."[19] The ALJ then discussed the evidence supporting his RFC assessment.[20]

Considering Plaintiff's RFC, the ALJ determined at step four that Plaintiff had been unable to perform her past relevant work.[21] At step five, the ALJ relied upon the testimony of a vocational expert to conclude that Plaintiff could have performed other work that existed in significant numbers in the national economy.[22] Based upon the vocational expert's testimony, the ALJ concluded that Plaintiff could have performed the representative occupations of Routing, Office Helper, and Marker.[23] Accordingly, the ALJ concluded that Plaintiff was not disabled from her alleged onset date until January 25, 2017 (the date Plaintiff's age category changed under the relevant rules), and, therefore, not entitled to DIB or SSI during that timeframe.[24] The ALJ also concluded that on January 25, 2017, Plaintiff became disabled under the relevant rules and, accordingly, was entitled to DIB and SSI from that date going forward.[25]

---

[19] AR 621.

[20] AR 621-26.

[21] AR 626.

[22] AR 626-27.

[23] AR 627.

[24] AR 627.

[25] AR 627-28.

Plaintiff appealed the ALJ's second decision, and, on November 12, 2020, the Appeals Council denied her appeal,[26] making the ALJ's decision final for purposes of judicial review.[27] The instant appeal timely followed.[28]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied."[29] The Commissioner's findings, "if supported by substantial evidence, shall be conclusive."[30] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[31] "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]."[32] "The [f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal."[33]

---

[26] AR 605-10.

[27] 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 404.981, 416.1481.

[28] ECF No. 3.

[29] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted).

[30] 42 U.S.C. § 405(g).

[31] *Lax*, 489 F.3d at 1084 (quotations and citation omitted).

[32] *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted).

[33] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (first alteration in original) (quotations and citation omitted).

The aforementioned standards of review apply to the Commissioner's five-step evaluation process for determining whether a claimant is disabled.[34] If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed.[35]

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that [her] impairments would have more than a minimal effect on [her] ability to do basic work activities, [she] is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.[36]

At step three, the claimant must show that his or her impairments meet or equal one of several listed impairments that are "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience."[37] "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . ."[38]

---

[34] 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process).

[35] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Williams*, 844 F.2d at 750.

[36] *Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)-(ii), 416.920(a)(4)(i)-(ii).

[37] 20 C.F.R. §§ 404.1525(a), 416.925(a); *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[38] *Williams*, 844 F.2d at 751.

At the fourth step, the claimant must show, given her residual functional capacity ("RFC"), that her impairments prevent performance of her "past relevant work."[39] "If the claimant is able to perform [her] previous work, [she] is not disabled."[40] If, however, the claimant is not able to perform her previous work, she "has met [her] burden of proof, establishing a prima facie case of disability."[41]

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step."[42] At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine "whether the claimant has the [RFC] to perform other work in the national economy in view of his age, education, and work experience."[43] If the claimant "can make an adjustment to other work," she is not disabled.[44] If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," she is disabled and entitled to benefits.[45]

## ANALYSIS

On appeal, Plaintiff challenges the ALJ's conclusion that she was not disabled from her alleged onset date until January 25, 2017. Although Plaintiff generally contends that the ALJ

---

[39] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[40] *Williams*, 844 F.2d at 751.

[41] *Id*.

[42] *Id*.

[43] *Id.* (quotations and citation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[44] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[45] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

7

erred by determining that Plaintiff could have performed light work, she specifically argues that the ALJ erred in evaluating certain medical opinions. Based upon the following analysis, Plaintiff's arguments fail. Therefore, court recommends affirming the Commissioner's decision.

**I.      The ALJ Did Not Err in Evaluating the Challenged Medical Opinions.**

Plaintiff argues that the ALJ erred in evaluating the medical opinions of: (A) Dr. Joseph Nelson ("Dr. Nelson"); (B) Ernie Chavez ("Mr. Chavez"); and (C) Dr. Michael Woolman ("Dr. Woolman"). Below, the court sets forth the relevant standards for the evaluation of medical opinions then addresses each of Plaintiff's challenges in turn. As demonstrated below, the ALJ did not err in his treatment of the challenged medical opinions.

"An ALJ must give consideration to all the medical opinions in the record [and] discuss the weight he assigns to such opinions."[46] In evaluating the weight given to medical opinions, an ALJ must consider the following factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c): (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the types of examinations and testing; (3) the extent to which the opinion is supported by relevant evidence; (4) consistency of the opinion with the record as a whole; (5) whether the opinion was rendered by a specialist in a particular area; and (6) other factors brought to the ALJ's attention that tend to

---

[46] *Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015) (alteration in original) (quotations and citation omitted).

support or contradict the opinion.[47] Importantly, an ALJ is not required to discuss every factor set forth in those regulations.[48]

With respect to the opinions of treating sources, an ALJ must adhere to additional requirements when considering those opinions.[49] Among those requirements is that the ALJ first must follow a process to determine if a treating source medical opinion is entitled to controlling weight.[50] If the opinion is not entitled to controlling weight, the opinion is still entitled to deference and must be weighed using the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c).[51]

### A. Dr. Nelson

As stated above, the ALJ's RFC assessment indicated that Plaintiff could perform light work with some limitations.[52] In considering the medical opinion evidence, the ALJ gave "great weight" to Dr. Nelson's opinions based upon a June 2013 examination of Plaintiff.[53] In the relevant portion of his opinions, Dr. Nelson stated:

---

[47] 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Vigil,* 805 F.3d at 1202. Because Plaintiff's applications for DIB and SSI were filed before March 27, 2017, these regulations apply here. 20 C.F.R. §§ 404.1527, 416.927 (governing evaluation of opinion evidence for claims filed before March 27, 2017).

[48] *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007) (stating that when an ALJ does not discuss every factor, it "does not prevent this court from according his decision meaningful review").

[49] *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

[50] *Langley,* 373 F.3d at 1119; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

[51] *Langley,* 373 F.3d at 1119.

[52] AR 621.

[53] AR 624.

> Based on physical examination there was evidence of lumbago that would limit [Plaintiff]'s ability to perform tasks of a laborious nature, to lift, carry[,] and handle heavy weight, to frequency [sic] bend or twist. However, this would not limit [Plaintiff]'s ability to stand occasionally, ambulate occasionally, sit, travel, hear, speak[,] or handle objects.[54]

Plaintiff contends that the limitations identified by Dr. Nelson above are consistent with sedentary work,[55] not light work.[56] Therefore, Plaintiff argues, the ALJ erred by giving Dr. Nelson's opinions great weight, while at the same time determining that Plaintiff could perform light work.

Plaintiff's argument fails because she does not demonstrate how the specific limitations contained in Dr. Nelson's opinions equate to a limitation to sedentary work. Indeed, rather than providing any analysis concerning how Dr. Nelson's limitations meet the definition of sedentary

---

[54] AR 432.

[55] The regulations define sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a); *see also* Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983).

[56] The regulations define light work as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the ALJ] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b); *see also* SSR 83-10, 1983 WL 31251, at *5.

work, Plaintiff simply states that Dr. Nelson's opined limitations are "an affirmation of her ability to do sedentary work"[57] and that Dr. Nelson "said [Plaintiff] could not do laborious work but could do sedentary work."[58] However, noticeably absent from Dr. Nelson's opinions are any reference to sedentary work or any of the specific limitations for sedentary work contained in the regulations. Furthermore, the fact that the ALJ gave great weight to Dr. Nelson's opinions does not mean that the ALJ was required to include every one of Dr. Nelson's limitations in Plaintiff's RFC. To the contrary, the ALJ was tasked with assessing Plaintiff's RFC based on the entire record.[59] For those reasons, the court concludes that the ALJ did not err in his treatment of Dr. Nelson's opinions.

    **B.    Mr. Chavez**

Mr. Chavez, a physical therapist, evaluated Plaintiff in February 2014.[60] In the relevant portion of his opinions, Mr. Chavez stated that Plaintiff

> can perform productive work activity at a sedentary demand capacity. She demonstrates the ability to perform lift/carry at waist level up to 25 pounds rarely and 20 occasionally. Her lifting abilities are most functional between thigh and shoulder heights. She is able to sit and walk on [a] frequent basis, but stairs/static standing, and elevated work are limited to an occasional basis. She is limited in the use of ladders and forward bending to rarely, but has no limitations with bilateral hand coordination, bilateral hand gripping,

---

[57] ECF No. 24 at 18 of 29.

[58] ECF No. 29 at 7 of 13.

[59] 20 C.F.R. §§ 404.1546(c), 416.946(c) (providing that the ALJ is responsible for assessing RFC); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.").

[60] AR 435-44.

or pinching. Low level tasks (kneeling, crawling, and crouching) are all limited to rarely.[61]

In considering Mr. Chavez's opinions, the ALJ determined that they were generally consistent with the medical records and the examination conducted prior to the opinions but gave them "partial weight."[62] In support of that determination, the ALJ concluded that the medical records showed that Plaintiff was limited more to light work than sedentary work and that an occasional limitation to kneeling, crouching, and crawling was more appropriate than a rare limitation in those activities.[63] Additionally, the ALJ determined that Plaintiff's ability to ride a scooter and her activities of daily living were inconsistent with Mr. Chavez's opinions.[64] With respect to Plaintiff's activities of daily living, the ALJ noted earlier in his decision that Plaintiff was able to take care of her own hygiene, cook, do laundry, clean up after herself, shop with her husband, drive, take care of her dogs, and sew.[65]

Plaintiff contends that the ALJ erred in his treatment of Mr. Chavez's opinions because Mr. Chavez opined that Plaintiff was limited to sedentary work while the ALJ determined that Plaintiff could perform light work. However, as with her argument concerning Dr. Nelson's opinions, Plaintiff does not show how the limitations contained in Mr. Chavez's opinion equate to a limitation to sedentary work under the regulations. Additionally, Plaintiff appears to assert

---

[61] AR 436.

[62] AR 624.

[63] *Id*.

[64] *Id*.

[65] AR 623.

that the ALJ was somehow required to incorporate into the RFC all of the limitations expressed by Mr. Chavez. However, the ALJ gave only partial weight to Mr. Chavez's opinions which, as shown below, was not an error. Therefore, the ALJ was not required to include in the RFC all of Mr. Chavez's asserted limitations, and, as noted above, that argument fails because it was the ALJ's responsibility for determining Plaintiff's RFC based on the entire record.[66]

Finally, as to Mr. Chavez's opinions, the court notes that Plaintiff does not appear to specifically challenge the ALJ's decision to give those opinions partial weight. Nevertheless, to the extent that Plaintiff's arguments could be construed as such, the court concludes that the ALJ's treatment of Mr. Chavez's opinions was proper because the ALJ relied upon an appropriate factor in determining that they were entitled to partial weight. Indeed, the ALJ relied upon the fact that those opinions were somewhat inconsistent with the other evidence in the record, including Plaintiff's activities of daily living.[67] Accordingly, the court concludes that the ALJ did not err in his treatment of Mr. Chavez's opinions.[68]

---

[66] 20 C.F.R. §§ 404.1546(c), 416.946(c); *Howard*, 379 F.3d at 949.

[67] 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion."); *see also Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013) (affirming the ALJ's decision to give diminished weight to a medical opinion based upon the claimant's activities of daily living, including, her abilities to: "car[e] for her own personal needs; do [ ] household chores, i.e., dishes, vacuuming; cooking; texting friends; using a computer; driving; grocery shopping; reading; watching television; visiting with friends; attending church on a weekly basis; and, attending church activities one night a week" (alterations in original) (quotations and citations omitted)).

[68] Plaintiff takes issue with the ALJ's reliance upon Plaintiff's ability to ride a scooter in determining that Mr. Chavez's opinions were entitled to partial weight. Although the court sees no error on the ALJ's part in that regard, even if it was an error, it would be harmless because the ALJ relied upon a proper factor in reaching his conclusion about Mr. Chavez's opinions. *See,*

### C. Dr. Woolman

Dr. Woolman, one of Plaintiff's treating physicians,[69] opined in May 2012 that Plaintiff was unable to: (1) lift more than 20 pounds, (2) kneel and stoop, (3) crouch or crawl, (4) reach overhead, (5) pull heavy objects, and (6) stand for long periods of time.[70] In January 2015, Dr. Woolman opined that Plaintiff would not be able to perform any sedentary or light work.[71] In October 2015, Dr. Woolman opined that Plaintiff would "very likely . . . have difficulty performing any job that requires movement of her head in any direction."[72] Finally, Dr. Woolman evaluated Plaintiff for the State of Utah Department of Workforce Services in January 2016 and noted no problems with Plaintiff other than occasional dizziness.[73] As shown below, Plaintiff incorrectly argues that the ALJ committed several errors in his treatment of Dr. Woolman's opinions.

---

*e.g.*, *Lax*, 489 F.3d at 1089 (concluding that even when an ALJ erred in making one finding in support of a conclusion, any such error was harmless because the ALJ relied upon other findings supported by substantial evidence).

[69] As noted above, when considering treating source opinions, like Dr. Woolman's, an ALJ is required to first determine whether the opinions are entitled to controlling weight. *Langley*, 373 F.3d at 1119; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Here, the ALJ did not indicate whether he was assigning controlling weight to Dr. Woolman's opinions. However, that is not a ground for reversal because the ALJ implicitly declined to give controlling weight to Dr. Woolman's opinions by assigning them little weight and partial weight. *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) ("[T]he ALJ implicitly declined to give the opinion controlling weight. Because we can tell from the decision that the ALJ declined to give controlling weight to [the treating source] opinion, we will not reverse on this ground.").

[70] AR 456-57.

[71] AR 539-40.

[72] AR 563.

[73] AR 542-50.

First, Plaintiff argues that the ALJ erred in his consideration of Dr. Woolman's May 2012 opinions.[74] The ALJ determined that Dr. Woolman's May 2012 opinion was entitled to "little weight" because Dr. Woolman's own treatment notes from Plaintiff's physical examinations showed tenderness and symptoms that would limit Plaintiff to light work, but the examinations did not show support of an inability to perform postural activities.[75] The treatment note cited by the ALJ in support of that determination demonstrates that Dr. Woolman's 2013 examination of Plaintiff showed that Plaintiff's neck was supple, she had equal strength in her extremities, and her sensory examination was normal.[76] The inconsistency between Dr. Woolman's opinions and his own treatment notes was a proper consideration for the ALJ to support the determination that Dr. Woolman's opinions were entitled to little weight.[77] Therefore, Plaintiff's argument concerning the ALJ's consideration of Dr. Woolman's May 2012 opinion fails.

Second, Plaintiff contends that the ALJ erred in his treatment of Dr. Woolman's 2015 and 2016 opinions. The ALJ concluded that those opinions were entitled to "partial weight" because

---

[74] The ALJ incorrectly referenced these opinions as being rendered in 2013, rather than in 2012. AR 625. However, given that the ALJ considered the 2012 opinion, the court concludes that the ALJ's error was harmless because did not affect the outcome of Plaintiff's case. *Poppa v. Astrue*, 569 F.3d 1167, 1172 n.5 (10th Cir. 2009) (concluding that the ALJ's incorrect reference for the dates of the claimant's surgeries "was a mere scrivener's error and did not affect the outcome of the case").

[75] AR 625.

[76] AR 577.

[77] 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *see also Romo v. Comm'r, Soc. Sec. Admin.*, 748 F. App'x 182, 186 (10th Cir. 2018) (providing that when limitations in a medical opinion are not supported by objective evidence, that "is a legitimate basis for the ALJ to afford the opinion less weight").

15

the opinions were "very vague and do not provide much insight into [Plaintiff]'s abilities."[78] This observation shows that the ALJ properly considered supportability in assessing Dr. Woolman's 2015 and 2016 opinions.[79] Furthermore, the ALJ correctly noted that those opinions did not provide much, if any, insight into Plaintiff's work-related limitations. Indeed, Dr. Woolman's January 2016 opinions did not note any limitations other than occasional dizziness.[80] Additionally, Dr. Woolman's January 2015 opinions, which stated that Plaintiff would not be able to perform any sedentary or light work,[81] went to an issue reserved to the Commissioner and, therefore, was not entitled to any significance or weight.[82] In addition, the ALJ relied upon other physical examinations demonstrating that although Plaintiff had "shown limitations with her back and neck due to pain, she has shown she is still capable of working at a light level with some restrictions."[83] Thus, the ALJ also considered consistency in determining the weight to assign to Dr. Woolman's opinions.[84]

---

[78] AR 625.

[79] 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion.").

[80] AR 542-50.

[81] AR 539-40.

[82] 20 C.F.R. §§ 404.1527(d)(1)-(3), 416.927(d)(1)-(3) (providing that an ALJ will give no special significance to medical source opinions on issues reserved to the Commissioner, including the issue of whether a claimant is disabled).

[83] AR 625.

[84] 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Third, Plaintiff contends that the ALJ erred by failing to include in Plaintiff's RFC Dr. Woolman's limitations related to Plaintiff's neck problems or headaches. Although it does not speak to Plaintiff's headaches, Plaintiff points specifically to Dr. Woolman's October 2015 opinion that Plaintiff would "very likely . . . have difficulty performing any job that requires movement of her head in any direction."[85] As discussed above, the ALJ gave only partial weight to that opinion, finding that it was vague and unsupported by other medical evidence in the record. Thus, as stated above, the ALJ's responsibility was to determine Plaintiff's RFC from the entire record, which he did and determined not to include those limitations in Plaintiff's RFC that the record, taken as a whole, did not support.[86]

Finally, Plaintiff argues that the ALJ's determination that Dr. Woolman's opinions were vague required the ALJ to recontact Dr. Woolman "to seek further development of the record" before rejecting Dr. Woolman's opinions.[87] That argument is without merit. Notwithstanding his determination that Dr. Woolman's opinions were vague, the ALJ determined, based upon his review of the entire record, that he had adequate information to make the determination concerning Plaintiff's disability. His decision to assign partial weight to Dr. Woolman's opinions, by itself, did not trigger a duty to recontact Dr. Woolman.[88] In short, because there was sufficient

---

[85] AR 563.

[86] 20 C.F.R. §§ 404.1546(c), 416.946(c); *Howard*, 379 F.3d at 949.

[87] ECF No. 24 at 25 of 29.

[88] *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) ("[I]t is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the evidence the ALJ receive[s] from [the claimant's] treating physician that triggers the duty." (second and third alterations in original) (quotations and citation omitted)).

information for the ALJ to make the disability determination, the ALJ was under no duty to recontact Dr. Woolman to further develop the record.[89]

## CONCLUSION AND RECOMMENDATION

The court concludes that all of Plaintiff's arguments fail. Accordingly, IT IS HEREBY RECOMMENDED that the Commissioner's decision in this case be AFFIRMED.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object.[90] The parties must file any objection to this Report and Recommendation within 14 days after being served with a copy of it.[91] Failure to object may constitute waiver of objections upon subsequent review.

DATED this 27th day of January 2022.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

[89] *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) ("The ALJ does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment." (citation omitted)).

[90] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[91] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).